T.C. Summary Opinion 2008-154

UNITED STATES TAX COURT


REYNARD CAMPBELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18402-06S.           Filed December 11, 2008.


Reynard Campbell, pro se.

<u>Shannon Edelstone</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to section 7463

of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered

_____

[1]All subsequent section references are to the Internal
Revenue Code of 1986, as amended and in effect for the tax year
at issue.  Rule references are to the Tax Court Rules of Practice
and Procedure.

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $14,508 deficiency in petitioner's Federal income tax for 2004. Respondent also determined a $2,901.60 accuracy-related penalty under section 6662(a). After concessions, the issues now before the Court are: (1) Whether petitioner is entitled to additional deductions claimed on Schedule C, Profit or Loss From Business, for business gifts, contract labor, automobile insurance, meals and entertainment, travel, legal fees, and car and truck expenses; (2) whether petitioner is entitled to additional deductions claimed on Schedule E, Supplemental Income and Loss, for repairs to two multi-unit dwellings used as rental properties (4319 and 4329 Rilea),[2] automobile and travel expenses, and legal and professional fees; (3) whether petitioner is required to capitalize certain expenditures relating to 4319 and 4329 Rilea; and (4) whether petitioner is liable for an accuracy-related penalty under section 6662(a).[3]

---

[2]The two rental properties are located at 4319 and 4329 Rilea Way in Oakland, California.

[3]In addition, respondent made two computational adjustments that resulted from adjustments to petitioner's gross and net incomes--one computational adjustment relates to petitioner's itemized deductions and the other to his self-employment taxes. Those computational adjustments will be resolved in the Rule 155 computation that the Court will direct in accordance with this opinion.

## Background

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings. At the time he filed his petition, petitioner resided in California.

Petitioner Reynard Campbell is very industrious. He is a certified public accountant (C.P.A.). In 2004 he was employed by Bay Area Rapid Transit (BART). In addition, he maintained his own auditing and accounting business, with respect to which he reported a Schedule C loss of $3,191 on his Form 1040, U.S. Individual Income Tax Return, for the 2004 tax year.[4] He also reported a Schedule E loss of $4,889 relating to 4319 and 4329 Rilea Way.[5]

On August 17, 2006, respondent issued a notice of deficiency principally disallowing many of petitioner's claimed Schedule C and Schedule E deductions. Petitioner filed a timely petition with this Court on September 12, 2006. A trial was held on May 23 and 25, 2007, in San Francisco, California.

At trial petitioner introduced 132 exhibits (including all joint exhibits) many of which included multiple pages. These

---

[4]Petitioner calculated that loss by subtracting $20,404 in reported business expenses from $17,213 in reported business income.

[5]Petitioner calculated that loss by subtracting $77,964 in expenses from $73,075 in rents received.

documents established that many expenses were incurred and paid. However, they frequently failed to demonstrate that the expenses were deductible business expenses rather than nondeductible personal expenses or they did not contain the detailed contemporaneous information necessary to satisfy the heightened substantiation requirements of section 274.

Discussion

## I.   Burden of Proof

The Commissioner's determination of a taxpayer's liability is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant to section 7491(a), the burden of proof on a factual issue that affects the taxpayer's tax liability may shift to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue."  Petitioner argues that the burden of proof shifts to respondent because petitioner has produced credible evidence to substantiate his expenses and because he "attended an office interview and appeals".  Because petitioner has not complied with the requirements to substantiate the remaining disallowed expenses and has not maintained all required records regarding those expenses, that argument is unpersuasive. Consequently, the burden of proof remains on petitioner.

II.  General Deduction Rules

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Generally, the Court may allow for the deduction of a claimed expense even where the taxpayer is unable to fully substantiate it, provided the Court possesses an evidentiary basis for doing so.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  In these instances, the Court is permitted to approximate the allowable expense, bearing heavily, if it so chooses, against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra at 544.

III.  Deductibility of Expenses Relating to Petitioner's Schedule
      C and Schedule E Businesses

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471

(1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940). In contrast, "personal, living, or family expenses" are generally nondeductible. Sec. 262(a).

Certain business expenses described in section 274(d) are subject to strict substantiation rules that supersede the Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., supra. Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; (3) any expense for gifts; or (4) the use of "listed property", as defined in section 280F(d)(4), including passenger automobiles. To deduct expenses to which section 274(d) applies, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use. Sec. 274(d) (flush language).

A. Expenses Not Subject to Section 274(d)

1. Contract Labor

Petitioner argues that he is entitled to deduct contract labor expenses in addition to the $1,699 respondent conceded on

brief. After this concession, $310 remains in dispute. This amount appears to be comprised of (1) $170 that petitioner paid his then girlfriend, Joyce Jones (Ms. Jones), who is now his wife, in June 2004, for "office help" and (2) $140 that petitioner paid Ling T. Lin (Ms. Lin) in October 2004 purportedly to reimburse her for providing a contract employee of petitioner's named Ethel Lu (Ms. Lu) with lodging while Ms. Lu was working on an audit for petitioner in October 2003. Petitioner has provided copies of canceled checks evidencing those payments, both of which reflect notations that they were for contract labor. Nevertheless, as explained below, petitioner has failed to carry his burden of substantiating at least one of those claimed business expenses.

At trial petitioner testified that Ms. Jones "would assist me in my business, and, you know, just doing things and which I did not pay her for, so from time to time I would just simply give her a gift." The record also contains copies of two canceled checks for $200 and $150 made payable to Ms. Jones for "BG", which is short for business gifts. Ms. Jones did not testify at trial. Although petitioner paid Ms. Jones $170 on June 25, 2004, the purpose of that payment is unclear. No evidence was introduced at trial that Ms. Jones included the $170 in her gross income. Moreover, even if it was a nontaxable business gift to Ms. Jones, it would not be deductible to the

extent that it exceeded the maximum allowable gift limitation of $25. See sec. 274(b)(1). As a result, petitioner has failed to satisfy his burden of proving that the payment was income to Ms. Jones and a deductible business expense for him.

The precise reason for petitioner's $140 payment to Ms. Lin in October 2004 is similarly opaque. The record contains a copy of a canceled $160 check from Ms. Lu to Ms. Lin dated October 22, 2003, $140 of which was for "rent". Also of record are (1) a note from Ms. Lu to petitioner dated February 17, 2004, in which Ms. Lu requested that petitioner reimburse her for the $140 that she had paid Ms. Lin the previous year and (2) a letter from Ms. Lin to petitioner dated August 3, 2004, informing petitioner that Ms. Lu had paid Ms. Lin $140 and asking petitioner to reimburse Ms. Lu for that expense. For reasons unknown, petitioner then paid Ms. Lin $140 in October 2004. Thus, even accepting arguendo, as the Court does, that petitioner had agreed to reimburse Ms. Lu for her living expenses and that such reimbursement would have been an ordinary and necessary business expense of petitioner, there is only ambiguous evidence that petitioner ever actually did so. Nevertheless, the Court will accept petitioner's testimony, which is corroborated by Ms. Lu's note, that the $140 payment to Ms. Lin was for a deductible business expense and that the accounting was ultimately sorted

out by Ms. Lu and Ms. Lin.  We will therefore allow the claimed $140 deduction.

  2.  Legal Fees

Legal fees are ordinarily deductible under section 162 on Schedule C only if (1) the matter with respect to which the fees were incurred originated in the taxpayer's trade or business and (2) the claim is sufficiently connected to that business.  See United States v. Gilmore, 372 U.S. 39 (1963); Test v. Commissioner, T.C. Memo. 2000-362, affd. 49 Fed. Appx. 96 (9th Cir. 2002).

Petitioner argues that he is entitled to a Schedule C deduction for $2,000 in retainer fees paid to an attorney, Melinda J. Burns (Attorney Burns), hired to represent him in seeking to "reopen" a ruling against him, apparently, by the California State Board of Accountancy.[6]  Although the record contains copies of petitioner's canceled personal checks, one for $1,800 and the other for $200, to Attorney Burns on April 26, 2004, petitioner no longer possesses a copy of the relevant retainer agreement because he "misplaced" or "accidentally shredded it".

---

[6]On brief, respondent concedes that petitioner is entitled to a $130 deduction for Schedule C legal and professional fees. Due to a rounding error, the amount conceded should have been $131.  Respondent has also conceded $171.30 for Schedule E legal and professional fees.

Petitioner's vague testimony sheds little light on his precise reasons for hiring Attorney Burns.  His failure to produce a copy of the retainer agreement or any other relevant information does not help matters.  Consequently, we are unable to conclude that the hiring of Attorney Burns was related to his Schedule C business as opposed to his employment with BART or some personal matter.  See Test v. Commissioner, supra.  As a result, petitioner is not entitled to a Schedule C deduction for the $2,000 that he paid Attorney Burns in 2004.

The remainder of petitioner's claimed Schedule C legal fees relate to his purchase of prepaid legal services.  Petitioner has provided bank statements relating to his auditing and accounting business that reflect seven monthly payments to LawAmerica, Inc., in 2004 for the purchase of prepaid legal services.[7]  Although those bank statements reflect that petitioner used that account to pay for both personal expenses and business expenses, we find credible petitioner's testimony that the prepaid legal services were purchased for his business.  We will therefore allow petitioner to deduct legal expenses of $224.47.

After respondent's $171.30 concession, $579.70 of petitioner's claimed $751 in deductions for legal fees associated

---

[7]The first of those payments was for $29.95, and the remaining six were for $32.42, for a total of $224.47.

with petitioner's Schedule E business remains in dispute.[8]  Of that amount, $337.50 was incurred when he hired an attorney to create a revocable inter vivos trust into which he transferred 4319 and 4329 Rilea.[9]  In his brief, referring to section 1.212-1(g), Income Tax Regs., petitioner asserts that he did so "to avoid probate with respect to the income-producing properties used to fund the trust."[10]  He argues that "This purpose lends support to characterizing the transaction as one for the conservation and maintenance of property held for the production o[f] income."

Petitioner's argument is unavailing.  Except for tax advice, which is not at issue here, fees paid in connection with the planning of a taxpayer's personal or family affairs have long been considered nondeductible personal expenditures under section 262.  See Epp v. Commissioner, 78 T.C. 801, 805-806 (1982);

---

[8]The $751 in disputed deductions for Schedule E legal and professional fees relates entirely to 4329 Rilea.

[9]He paid the attorney, Randall C. Thompson, $675, half of which he allocated to 4329 Rilea.  For unknown reasons, in the notice of deficiency, respondent did not disallow the other half, $337.50, allocated to 4319 Rilea.  Respondent has not raised that issue in these proceedings.

[10]Under sec. 212(2), a deduction is allowed for ordinary and necessary expenses paid or incurred "for the management, conservation, or maintenance of property held for the production of income".  Sec. 1.212-1(g), Income Tax Regs., addresses the deductibility of "Fees for services of investment counsel, custodial fees, clerical help, office rent, and similar expenses paid or incurred by a taxpayer in connection with investments held by him".

Bagley v. Commissioner, 8 T.C. 130, 135 (1947). Moreover, avoiding probate would not have benefited petitioner in producing income for himself. See Epp v. Commissioner, supra at 805-806 ("[E]ven if the creation of the trust would save some probate expenses, such savings would not benefit the petitioner, but would benefit her estate or her sisters."). Petitioner has not demonstrated that any portion of the fees paid to create an inter vivos trust is deductible under either section 162 or section 212.

A review of petitioner's bank records reveals that the remaining disputed Schedule E deductions for legal and professional fees relate to membership fees petitioner paid, apparently to the Rental Housing Association of Northern Alameda County.[11] We will allow him a deduction of $252.10 for those expenses.[12]

---

[11]The bank statements reflect a $75 debit in August 2004 and a $210 debit in November 2004 by "Rental Housing Associat". Because petitioner was a landlord in Oakland, California, it is reasonable to infer that the "Rental Housing Associat" was the Rental Housing Association of Northern Alameda County, "a nonprofit trade association representing over 20,000 rental property owners in the cities of Oakland, Berkeley, Alameda, Albany, Emeryville, and Piedmont."

[12]Although petitioner only requests $232.50 in deductions, that appears to be because of a mathematical error. In his general ledger, he apparently allocated $32.50 of the $75 August 2004 membership payment to 4319 Rilea and $32.50 of that $75 payment to 4329 Rilea, leaving $10 unaccounted for.

B.  Expenses Subject to Strict Substantiation Under Section 274(d)

1.  Automobile Expenses

Petitioner owns five automobiles and claims that he used one car and two pickup trucks in his Schedule C and Schedule E businesses.  He claims that he is entitled to deductions using the actual cost method for expenses relating to those vehicles.  The car is a Nissan Maxima that petitioner purchased on March 11, 2003, for which he also claimed a $3,938 mileage deduction on Schedule A, Itemized Deductions.  Respondent has not challenged that deduction.  We note that taxpayers are prohibited from claiming duplicate expenses on the same automobile by deducting an automobile expense using the actual cost method and using the standard mileage rate.  See Tesar v. Commissioner, T.C. Memo. 1997-207 ("Automobile expense may be computed using actual costs, such as depreciation, or using the standard mileage method; thus, petitioners cannot deduct depreciation expense and use the standard mileage rate.").[13]  The trucks are a Toyota (model unknown) and a Ford Ranger.

Respondent has conceded that of the $3,521 of automobile insurance in dispute, petitioner is entitled to a $1,599

---

[13]To allow taxpayers to claim both would be to allow double dipping.  See Campana v. Commissioner, T.C. Memo. 1990-395 (noting that "the standard mileage rate includes an allowance for depreciation, as well as for maintenance and repairs, tires, gasoline, oil, insurance, and registration fees").

deduction for insurance on the Toyota truck.[14]  The remaining $1,500 Schedule E deduction for that vehicle relates to "engine work" allegedly preformed by petitioner's friend, which petitioner paid for in cash.  Petitioner's self-serving testimony alone is insufficient to support that deduction.

Petitioner claims that he is entitled to a $6,750 Schedule E deduction for the purchase of the Ford Ranger.  His testimony relating to that vehicle was particularly evasive and perplexing. He claims to have paid an unnamed individual $6,750--in the form of a cashier's check--for that vehicle, apparently at some point in 2003.  He testified that he was sure he had a copy of that check somewhere in his house, but it was never provided.  He also testified that he never had the truck insured, that he intended to use it in his business, and that he then sold it for a price that he could not remember.  He has therefore failed to substantiate any deductions relating to that vehicle.

Petitioner argues that he is entitled to a $5,716 Schedule C deduction for expenses relating to the Nissan Maxima, which he

---

[14]Petitioner has conceded that he is not entitled to deductions for the insurance premiums paid in 2004 on his two other cars, a Honda Civic ($381) and a Chevrolet Impala ($449). After the parties' concessions, the amount of automobile insurance still in dispute relates primarily to the Nissan Maxima ($804).  Petitioner is not entitled to a deduction for that amount, as is discussed later in this section of the opinion. The remaining $288 in dispute is from a prior balance on petitioner's account with his insurance company.  Because he has introduced no evidence regarding his prior balance, petitioner is not entitled to a deduction for paying it off in 2004.

claims to have used exclusively (or almost exclusively) in connection with his auditing business.[15] However, he has failed to introduce adequate evidence to show which part of the automobile expense, if any, was personal and which part, if any, related to his Schedule C business. The document prepared by petitioner shortly before trial and his numerous receipts and bank statements are not sufficiently probative for that purpose. See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

At trial petitioner appears to have argued that because of his accounting and rental businesses all of his travel was business related and he never incurred commuting expenses. We are unpersuaded and believe that he used the Nissan Maxima to commute to his full-time job with BART. In fact, on his Schedule C, petitioner stated that he drove the Nissan Maxima 10,200 miles for business, 2500 miles for commuting, and 300 miles for "Other". Petitioner's trial testimony also suggests that BART sometimes required him to use the Nissan Maxima for work and that

_____

[15]How petitioner came up with $5,716 is not determinable from the record. We are also perplexed by our observations that respondent appears to have allowed petitioner (1) a $4,900 depreciation deduction on the Nissan Maxima claimed on Form 4562, Depreciation and Amortization, filed with respect to 4329 Rilea for 2004, which was then included on line 20 of Schedule E and deducted as part of his $4,889 rental loss on line 17 of his Form 1040 and (2) a $3,938 Schedule A mileage deduction relating to the Nissan Maxima for 10,500 miles for 2004, as was asserted by petitioner on Form 2106-EZ, Unreimbursed Employee Business Expenses.

he might have been reimbursed by BART for such use. This
undercuts his argument that he used that vehicle exclusively for
his Schedule C business.[16] Accordingly, for all the reasons
stated, the Court sustains respondent's adjustment as to this
issue.

2. Meals and Entertainment Expenses

Petitioner has provided copies of a number of receipts, some
of which are illegible, in support of claimed deductions of
$1,155 for what he characterizes as "small value meals incurred
when meeting and dealing with perspective [sic] clients and
colleagues with matters associated with Petitioner's business."[17]
He has also produced a self-prepared "General Ledger" detailing
monthly charges to his bank account for "Travel, meals &
entertain." along with copies of associated bank records.

Because petitioner has provided neither the name of even a
single person with whom he met nor any corroborating evidence
that the claimed expenditures for business meals had a business
purpose, he has not demonstrated entitlement to deductions for

---

[16]Commuting expenses are generally considered personal and
nondeductible. Commissioner v. Flowers, 326 U.S. 465, 473-474
(1946); sec. 1.162-2(e), Income Tax Regs.

[17]Petitioner improperly claimed the entire $1,155 as a
deduction without accounting for the 50-percent reduction imposed
by sec. 274(n).

business meals.[18]  See sec. 1.274-5T(b)(3)(iv) and (v), Temporary
Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).  Although he
asks us to apply our discretion to allow him some deductions for
those expenses, as noted earlier, the strict substantiation
requirements of section 274(d) preclude us from doing so.  See
supra p. 6.  Accordingly, we sustain respondent's determination
on this issue.

### 3. Expenses for Business Gifts

Petitioner claims entitlement to a deduction of $1,426 for
business gifts.  Under section 274(b), no deduction is allowed
under section 162 for any expense for gifts made directly or
indirectly to any individual to the extent that such expense
exceeds $25.  Of petitioner's 13 claimed business gifts, 11
exceed $25.[19]

Additionally, to substantiate expenses relating to gifts, a
taxpayer must provide adequate records or corroborating evidence
showing, among other things, the business purposes of the gifts
and the business relationships between the taxpayer and the gift
recipients.  Sec. 274(d); sec. 1.274-5T(b)(5), (c), Temporary

---

[18]Moreover, we agree with respondent that some of the meals
for which petitioner claimed deductions appear to have been for a
single person.

[19]Petitioner lists only 12 business gifts in his self-
prepared ledger.  However, his final ledger entry under the
heading "Business gifts" is for $141.33.  The $141.33 actually
represents two separate purported business gifts, one for $76.10
and the other for $65.23.

Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The evidence petitioner presented falls far short of satisfying that standard, and petitioner's trial testimony does not help matters. Although petitioner characterized many of the claimed business gifts as charitable contributions, he failed to demonstrate that they were to organizations described in section 170(c)(2) for which a charitable contribution deduction can be claimed under section 170(a).

Nevertheless, we will allow petitioner two Schedule A deductions--one for $20 paid to Skyline High School on June 4, 2004, and one for $50 paid to the San Francisco Aids Foundation on September 3, 2004.[20] The rest of petitioner's claimed business gifts were to individuals or organizations for which there is no evidence they were qualifying organizations under section 170(c)--some were even personal gifts to his girlfriend and mother. Additionally, petitioner has not demonstrated that any of those claimed business gifts were ordinary and necessary business expenses or that they qualify as charitable contribution

---

[20]Skyline High School is a public high school in Oakland, California. In accordance with sec. 170(c)(1), we will allow petitioner a Schedule A itemized deduction for the $20 paid to Skyline High School. The San Francisco Aids Foundation is listed in IRS Publication 78, Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986. We will therefore allow petitioner a Schedule A itemized deduction for the $50 paid to that organization. See sec. 170(c)(2).

deductions.  He is therefore not entitled to deductions for those expenditures.

4. Travel Expenses

Section 162(a)(2) permits taxpayers to deduct travel expenses incurred "while away from home in the pursuit of a trade or business."  The phrase "away from home", as it is used in section 162(a)(2), means that the taxpayer must be on a trip requiring sleep or rest.  See United States v. Correll, 389 U.S. 299, 303-304 (1967).

Petitioner's "home" for purposes of section 162(a)(2) is in Oakland, California.[21]  His Schedule C and Schedule E businesses are also located there.  The only specific business trips "away from home" that petitioner alleges with respect to 2004 were "to Rancho Cordova to take training."  However, he has no documentation to support any of those trips.  Consequently, he has not substantiated the claimed travel expenses of $1,405, and we sustain respondent's determination on this issue.

---

[21]A taxpayer's home, for purposes of sec. 162(a)(2), "means the vicinity of the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment."  Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). Petitioner lives and has a full-time job in Oakland, California.

IV. <u>Whether Petitioner Was Required To Capitalize Certain</u>
    <u>Expenditures Relating to 4319 and 4329 Rilea</u>

The parties' $2,283 dispute with respect to 4319 Rilea concerns petitioner's deductions for expenses incurred to install a garage door opener and a vinyl floor.[22]  Their $3,581 dispute with respect to 4329 Rilea concerns petitioner's deductions for expenses incurred to (1) replace a garage door opener, (2) replace a formica countertop with a granite countertop, and (3) refinish cabinets.

Citing section 1.162-4, Income Tax Regs., petitioner argues that he was not required to capitalize "repair expenses" for work done on 4319 and 4329 Rilea.  Respondent counters that the repairs petitioner made must be capitalized because they were in the nature of replacements or improvements that substantially prolonged the useful lives of petitioner's properties.

Section 263 generally prohibits deductions for capital expenditures.  Nondeductible capital expenditures include "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property".  Sec. 263(a)(1). In contrast, deductible expenditures include those made merely to maintain property in operating condition.  See <u>Ill. Merchs. Trust Co. v. Commissioner</u>, 4 B.T.A. 103, 106 (1926) ("A repair is an

---

[22]On brief, respondent concedes that petitioner is entitled to a $195 deduction relating to 4319 Rilea, apparently for expenses incurred in patching discolored carpeting in the hallway and living room.

expenditure for the purpose of keeping the property in an ordinarily efficient operating condition."). The distinction between a nondeductible capital expenditure and a deductible repair is summarized in section 1.162-4, Income Tax Regs.:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

The deductibility of repair expenses also depends upon the context in which the repairs are made. Courts have held that expenses incurred as part of a general plan of rehabilitation must be capitalized even if they would have been deductible as ordinary and necessary business expenses if separately incurred. See United States v. Wehrli, 400 F.2d 686, 689 (10th Cir. 1968); Norwest Corp. v. Commissioner, 108 T.C. 265, 280 (1997).

Contrary to petitioner's belief, a number of the disputed deductions relate to expenditures made to improve, not maintain, his rental properties. The installation of new flooring in 4319 Rilea, the installation of the new granite kitchen countertop in 4329 Rilea, and the replacement of two garage door openers that

petitioner has acknowledged were broken and unused were improvements or replacements that added to the value of his residential rental properties. As such, petitioner was required to capitalize them.[23] However, we will allow petitioner to deduct $1,250 that he paid to strip and refinish kitchen cabinets as part of "regular maintenance" of 4329 Rilea.[24]

V.   Section 6662 Penalty

The notice of deficiency included the imposition of an accuracy-related penalty under section 6662(a).[25] Under section 7491(c), respondent bears the burden of production with respect to petitioner's liability for the section 6662(a) penalty. This means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant

---

[23]We note respondent's concession that "petitioner may be entitled to segregate out the amounts spent on removing the formica countertop and the garage door openers" and deduct, rather than capitalize, those removal costs, if any. Petitioner has not attempted to do so.

[24]In light of this deduction, petitioner is not entitled to $179 of depreciation that respondent had allowed with respect to the refinished cabinets. Respondent had allowed $784 of depreciation with respect to 4319 Rilea and 4329 Rilea. In light of this adjustment, petitioner is entitled to a revised $605 depreciation deduction adjustment.

[25]The explanatory form attached to the notice of deficiency apprised petitioner that the sec. 6662 penalty was being imposed on the basis of one or more of the elements set forth in sec. 6662(b). In respondent's pretrial memorandum and on brief, respondent argues for the imposition of the penalty on two grounds--that petitioner substantially understated his income tax and that such understatement was attributable to negligence or disregard of the rules or regulations.

penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001).
Respondent has done so.

Subsection (a) of section 6662 imposes an accuracy-related penalty on an underpayment of tax that is equal to 20 percent of any underpayment that is attributable to a list of causes contained in subsection (b). Among the causes justifying the imposition of the penalty are (1) negligence or disregard of rules or regulations and (2) any substantial understatement of income tax. Sec. 6662(b)(1) and (2). Section 6662(c) defines negligence as "any failure to make a reasonable attempt to comply with the provisions of this title". "[D]isregard" is defined to include "any careless, reckless, or intentional disregard." Id. Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

There is a "substantial understatement" of income tax for an individual in any tax year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A). However, the amount of the understatement is

reduced to the extent it is attributable to an item (1) for which there is or was substantial authority for the taxpayer's treatment thereof, or (2) with respect to which the relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there is a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

On brief, petitioner argues that he did not substantially understate his 2004 income tax because his claimed deductions were proper. At trial he testified that he relied on Internal Revenue Service (IRS) Publication 463, Travel, Entertainment, Gift, and Car Expenses, and Publication 527, Residential Rental Property, in claiming the disallowed deductions. Respondent counters that petitioner is a C.P.A. who failed to maintain adequate records and claimed deductions for business expenses that were "purely personal." Regarding petitioner's reliance on the aforementioned IRS publications, respondent asserts that

petitioner has not demonstrated that his treatment of the expenses at issue is consistent with the guidance set forth in those publications.

In light of our conclusions in earlier portions of this opinion, petitioner substantially understated his 2004 Federal income tax liability.[26]  Because he is a C.P.A. who knew or should have known that he was claiming many deductions to which he was not entitled, petitioner was negligent in underpaying his 2004 Federal income tax.  His asserted reliance on IRS publications does not demonstrate reasonable cause and good faith for the underpayment.  To begin with, such publications are not authoritative sources of Federal tax law.  See Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979).  Moreover, even assuming that reliance on IRS publications could shield petitioner from the imposition of the section 6662 penalty, the publications he cites do not support the propositions for which he cites them.  Because petitioner has not demonstrated reasonable cause and good faith for the underpayment, we sustain respondent's imposition of the section 6662(a) penalty.

---

[26]Respondent asserts correctly that there is a substantial understatement even after accounting for respondent's many concessions.  The same is true after accounting for our decision to allow petitioner to deduct some of his expenditures for contract labor, charitable gifts, membership fees, repairs, and prepaid legal services for his businesses in 2004.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing and concessions made by the parties,

<u>Decision will be entered under Rule 155</u>.